IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Michael W. McDonald, Jr.,            :

            Plaintiff            :       Civil Action 2:09-00314

    v.            :       Judge Holschuh

Michael J. Astrue, Commissioner      :
of Social Security,                          Magistrate Judge Abel
                                     :
            Defendant
                                     :

**ORDER**

This matter is before the Court on plaintiff Michael W. McDonald Jr.'s May 6, 2010 objections (doc. 17) to Magistrate Judge Abel's April 27, 2010 Report and Recommendation (doc. 16).  The Court, having reviewed the record *de novo*, determines that there is substantial evidence supporting the administrative law judge's determination that plaintiff McDonald is not disabled within the meaning of the Act. The Court further finds for the reasons set out below that plaintiff's objections to the Report and Recommendation are without merit.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the administrative law judge failed to accord due deference to the opinion of Dr. Jon Pearlman, McDonald's long-time treating physician, that he is unemployable.

The Magistrate Judge fairly summarized Dr. Pearlman's office records as follows:

<u>Jon Pearlman, M.D., 2003.</u> Dr. Pearlman treated McDonald repeatedly between January 27, 2003 and June 2, 2007.  On March 18, 2003 Dr. Pearlman referred McDonald to physical therapy for lower back pain.  At the time of his first session, McDonald reported aching lower back pain and numbness in his lower extremities, which had started in 1997.  He stated that the symptoms were constantly present, and that they got worse if he stood, rose, sat, or walked.  McDonald stated that he was currently limited to 60 minutes of sitting and 30 minutes of walking.  (R. 174.)  The therapist opined that Plaintiff had a full range of motion, with decreased function, and that he exhibited fair to good rehabilitation potential.  She recommended that he attend physical therapy three times a week for six weeks.  (*Id*.)  His course of therapy concluded on May 2, 2003, after he had consistently attended eighteen sessions.  The therapist found that he had tolerated the therapy very well, with decreased pain, and improved posture, function, and body mechanics.  She stated that McDonald had met most of his functional goals, though he would continue to pursue his long-term goals with strengthening exercises.  (R. 152.)

On June 2, 2003, McDonald followed up on his lower back pain complaints with Dr. Pearlman.  He complained of stiffness and aching pain throughout his lower back, with numbness and tingling about his right anterior lateral thigh.  He denied distal lower extremity pain, weakness or sensory loss.  Upon examination, Dr. Pearlman found McDonald's right hip range of motion to be full, with full strength.  He reviewed the January 30, 2003 MRI, and concluded that McDonald's right lower extremity paresthesias were suggestive of nerve root irritation at approximately L3 coinciding with L3-4 disc protrusion.  Dr. Pearlman's impressions were lumbar radiculitis and lumbar spondylosis, and he recommended a diagnostic LESI to include right L3-4 transforaminal approach, and a trial of Neurontin.  (R. 300.)  The lumbar epidural steroid injection was performed on June 10, 2003;  McDonald tolerated the procedure well, and was discharged.  (R. 126.)

At his August 8, 2003 follow-up, however, Dr. Pearlman noted only "transient improvement" after the LESI, with improvement in his thigh numbness lasting about a week.  Dr. Pearlman prescribed Lodine 400 mg and Zanaflex 2 mg, and stated that McDonald would continue with his home directed exercise program.  (R. 299.)  At an October 7, 2003 follow-up, McDonald complained of constant aching lower back pain which had increased in the past few weeks.  He described pain radiating to his posterior hips and lateral thighs to just below his knee.  Dr. Pearlman, finding his complaints consistent with worsening of his L3-4 disc protrusion and radiculitis, continued him on his medications and ordered

2

a new MRI of the lumbar spine. (R. 298.) This MRI was conducted on October 15, 2003. It re-demonstrated multilevel degenerative changes, with no significant neural foraminal narrowing or central canal stenoses. (R. 218.) At a January 13, 2004 follow-up, McDonald reported continued pain. Dr. Pearlman interpreted the October 15, 2003 MRI, finding diffused disc bulge at L5/S1 eccentric to the left butting and deviating the left S1 nerve root. He found noted multilevel degenerative changes. After discussing his findings with McDonald, he referred him for orthopaedic spine consultation. (R. 297.)

. . .

McDonald returned to Dr. Pearlman for a February 19, 2004 follow-up after his consultation with Dr. DeGenova. In addition to continued low back pain, McDonald complained of posterior cervical spine pain off and on for several years and progressively worsening, with occasional sharp head pains. (R. 291.) Dr. Pearlman's impressions were lumbar degenerative disk disease in L4-5 and L5-S1, and chronic cervical spine pain. However, Dr. Pearlman noted that the recommended IDET procedure was not covered by McDonald's insurance. He recommended a lumbrosacral corset and renewed McDonald's prescriptions, and referred him for x-rays and MRI to evaluate his chronic neck pain. (R. 292.)

On April 15, 2004, McDonald visited Dr. Pearlman for another follow-up. He claimed that the lumbrosacral corset had been minimally effective, and that his back and lower limb pain had continued. (R. 289.) McDonald had undergone x-ray and MRI examination on February 23, 2004; these were unremarkable, with the exception of minimal posterior bulging at the C5-6 and C6-7 discs. Upon physical examination, Dr. Pearlman found decreased range of motion in his head and neck, and good range of motion in the upper limbs and lower extremities. In addition to his impressions from the prior visit, Dr. Pearlman noted intermittent bilateral arm paresthesias. (R. 290.) He refilled McDonald's prescriptions, and referred him for renal and hepatic blood work and for an upper extremity EMG/nerve conduction study. (*Id.*)

McDonald continued to see Dr. Pearlman for treatment of his back pain. On December 6, 2004, McDonald complained of recurrent back pain, but reported that physical therapy and home exercises had been beneficial. (R. 415.) Dr. Pearlman noted that his back pain was "stable" and responsive to exercise. On February 7, 2005, McDonald again reported intermittent soreness and stiffness through his lumbar region, with hip pain. Dr. Pearlman noted that McDonald was in no acute discomfort, and that his medications "helped maintain his overall functioning" and were being tolerated well. (R. 414.) He opined that the

condition was stable and that pain only mildly increased with lumbar extension.  On March 25, 2005, McDonald reported a recent slip and fall and increased back and hip pain; Dr. Pearlman noted muscular strain and possible aggravated degenerative disc problems.  (R. 413.)  He ordered new x-rays and MRI of the thoracic and lumbar spine.

On June 9, 2005, McDonald again visited Dr. Pearlman for back pain; Dr. Pearlman reviewed a new lumbar spine MRI of April 1, 2005, which showed bulging disc osteophyte complex at L5-S1 noted to mildly deviate the left S1 nerve root.  MRI of the thoracic spine showed signs suggesting congenial changes, but no stenosis or acute disc injury.  (R. 412.)  Dr. Pearlman opined: "Overall, he has managed his condition well with his current medications, which he has tolerated without difficulty."

On September 1, 2005, McDonald returned to Dr. Pearlman continuing to complain of lower back pain.  He claimed that he had good days and bad days, but that the pain was aggravated by prolonged standing or walking, or lifting and bending.  (R. 411.)  McDonald again reported that his medications were helpful, and seemed in no obvious distress.  Dr. Pearlman noted that McDonald's condition was stable and that he continued to suffer pain consistent with degenerative disc disease and lumbar spondylosis, but that he was managing well.
McDonald visited Dr. Pearlman again repeatedly from March 6, 2006 through June 26, 2007.  On each occasion, McDonald continued to complain of lower back pain, but stated that his medications were effective in reducing his pain and permitting him to maintain functioning and activities.  (R. 406, 407, 408, 525, 526, 527, 528.)  On June 1, 2006, McDonald reported improvement in his flexibility from physical therapy, and stated that he would attempt to return to work with restrictions.  However, on August 24, 2006, McDonald complained of increased lower back pain and more pronounced right thigh numbness following a canoeing trip.  (R. 406.)  Dr. Pearlman advised him to perform sedentary work, and ordered a new lumbar x-ray.  This x-ray was performed on the same day, and reported minimal scoliosis centered at L4-L5, with no change in alignment with flexion and extension views.  (R. 526.)  At his March 7, 2007 follow-up, Dr. Pearlman noted that McDonald transferred from sit to stand without discomfort, and again reported that his condition was stable and that he was benefitting from his medications.  (R. 527.)  However, McDonald complained at his June 26, 2007 visit of increased lower back pain over the previous four weeks, with increased burning pain and numbness in his right lateral thigh to his knee, which worsened with standing and walking.  (R. 528.)  Dr. Pearlman modified McDonald's medications, and ordered new x-rays and MRIs.

April 27, 2010 Report and Recommendation, at pp. 6-12. In June 2007, Dr. Pearlman executed a form Physical Capacities Evaluation, stating that McDonald was unable to work an 8-hour day. He believed that plaintiff could work, sit, or stand for only ½ hour. He could frequently lift/carry up to 5 pounds. He could occasionally carry up to 10 pounds. Dr. Pearlman checked a box indicating that McDonald was unemployable. (R. 524.)

The administrative law judge rejected Dr. Pearlman's opinion and accepted that of Dr. William Newman, an orthopedic surgeon, who testified at the hearing as a medical expert:

> During recent medical visits with his treating physician, Dr. Jon Pearlman, the claimant reports that his medications have continued to be helpful and allow him to maintain his activities at home (Exhibit 16F, p.4). Dr. Pearlman consistently notes that upon physical examination, the claimant appears in no acute discomfort and displays normal muscle tone and strength bilaterally. Consequently, Dr. Pearlman describes the claimant's condition as stable and finds that he is managing well with his current medications." (*Id*.)
>
> However, in evaluating the claimant's physical capabilities, Dr. Pearlman opined that the claimant can only stand/walk up to half hour a day, sit up to half hour a day, lift/carry 5 pounds frequently and 10 pounds occasionally and can occasionally perform handling but can continuously push/pull, bend, reach and engage in repetitive foot movements. The undersigned accords little weight to Dr. Pearlman's physical capacity evaluation as it is inconsistent with his own treatment notes, in which he reports that the claimant has no significant difficulties during physical examinations and has been able to stabilize his back pain with medication.
>
> After reviewing the claimant's medical records and listening to his testimony at hearing, medical expert, Dr. William Newman, testified that the claimant could engage in light exertional work. The undersigned accepts and agrees with this opinion, which is generally consistent with

5

> the medical evidence of record, in particular Dr. Pearlman's progress notes, the radiological images in the record, which do not demonstrate any significant abnormalities in the claimant's lumbar or thoracic spine and physical examinations findings, which reveal that the claimant has consistently demonstrated normal muscle tone and strength bilaterally (Exhibit 16F).

(R. 24.)

The Magistrate Judge concluded that the administrative law judge gave good reasons for rejecting Dr. Pearlman's opinion that McDonald was unemployable:

> Here, the ALJ specifically addressed Dr. Pearlman's long history of treating Plaintiff, and even stated that she found Dr. Newman's conclusions persuasive because they were consistent with Dr. Pearlman's treatment notes. However, she also gave specific reasons for discounting Dr. Pearlman's form evaluation that McDonald was almost completely incapable of activity. His treatment history, especially for the last two years of the treatment record, records Dr. Pearlman's repeated impressions that McDonald's condition was stable and controlled by medication. Although the final entry of June 26, 2007 noted recently increasing pain, McDonald's condition otherwise appeared to become significantly worse only through unusual physical exertion (R. 406) or accidental fall (R. 413). The ALJ apparently found it difficult to reconcile Dr. Pearlman's repeated findings of a stable condition with no acute discomfort and normal muscle strength and tone with a form evaluation that Plaintiff could not sit for longer than half an hour at a time and was unemployable. *Compare* R. 527 ("[h]e transferred from sit to stand without discomfort"), R. 528("Patient reports that he may begin clearing brush... [h]e is advised to perform sedentary work", R. 524 (finding that plaintiff could not sit for more than one half hour in a workday); *see also* R. 492 (Dr. DeGenova's opinion that "whether or not he has his surgery, I do not think he will return to the type of heavy work he was doing previously and he should attempt to find a lighter duty job"). The ALJ reconciled the difference by discounting Dr. Pearlman's form evaluation, and relying upon his treatment notes instead.

April 27, 2010 Report and Recommendation, at pp. 22-23.

A treating doctor's opinion does not bind the Commissioner when it is not supported by detailed clinical and diagnostic test evidence. *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779-780 (6th Cir. 1987); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1983); *Halsey v. Richardson*, 441 F.2d 1230, 1235-1236 (6th Cir. 1971); *Lafoon v. Califano*, 558 F.2d 253, 254-256 (5th Cir. 1975). 20 C.F.R. §§404.1513(b), (c), (d), 404.1526(b), and 404.1527(a)(1). Here the administrative law judge reasonably found that Dr. Pearlman's assessment that McDonald was unemployable was not consistent with the clinical and medical test findings in his treatment notes. Further, the MRIs and x-rays are consistent with the administrative law judge's residual functional capacity findings and Dr. Newman's testimony. A January 2003 MRI was interpreted to show mild degenerative changes at L3-L4 and L5-S1. There was no focal disk bulge or central stenosis. (R. 306.) In February 2004, x-rays and an MRI of the cervical spine were unremarkable. (R. 289.) An April 2005 MRI of the lumbar spine showed no stenosis or acute disc injury. There was a disc bulge at L5-S1, but no focal disc herniation. The impression was mild degenerative disc disease at L4-L5 and L5-S1. (R. 426.) An MRI of the thoracic spine showed no evidence of disc herniation or spinal cord impingement. (R. 427.) March 2005 x-rays showed mild degenerative changes in the mid-thoracic spine. The lumbar spine had normal alignment of the vertebral spine. The vertebral body heights were within normal limits. The x-rays were described as an "unremarkable lumbar spine series." (R. 428.)

Clinical findings by other examining specialists were consistent with the administrative law judge's residual functional capacity findings. In January 2004, Dr. F. Paul De Genova, a physician at Grant Sports Medicine & Orthopedic Associates, found that McDonald was tender along his lumbar spine. He had no spasm or atrophy. (R. 491.) His muscle strength was normal. His sensation was intact. Straight leg raising was negative. Dr. De Genova said that McDonald probably would not be able to return to his previous heavy work. (R. 492.)

Similarly, in October 2004 Dr. Steven V. Priano, an orthopedic specialist who examined McDonald at Dr. Pearlman's request, found that plaintiff's muscle strength was normal. He had no sensory loss. (R. 419.) There was "minimal paraspinal muscle tenderness." He had a normal range of motion in the spine. (R. 420.)

While Plaintiff argues that "the physician who treated him approximately 25 times over a period of more than four years was... in the best position to judge how much physical activity he could tolerate", that physician's drastic physical residual capacity evaluation was not supported by the notes he had created over that period, or by other objective evidence.[1] The ALJ adopted instead Dr. Pearlman's treatment notes,

---

[1] Plaintiff's argument is based to some extent on the Magistrate Judge's statement that his condition "otherwise appeared to become significantly worse only through unusual physical exertion". (Doc. 16 at 23.) He states: "Where an outing as a mere passenger as a canoe caused increased pain, it clearly did not require greatly increased exertion to exacerbate the lumbar spine." (Doc. 17 at 2.) The record contains only Dr. Pearlman's August 24, 2006 note that Plaintiff "complains of increased pain in his lower back since canoeing several days ago." (R. 525.) At the hearing, Plaintiff testified only that he had suffered increased pain after canoeing, that he thought it had been caused by the seat design, and that he did not intend to try it again. (R. 577.) Dr.

and the opinions of the medical expert which agreed with them.  The Court agrees with this decision.

Upon *de novo* review in accordance with the provisions of 28 U.S.C. §636(b)(1)(B), the Court **ADOPTS** the Report and Recommendation.  Plaintiff's motion for summary judgment is **DENIED.**  Defendant's motion for summary judgment is **GRANTED.**  The decision of the Commissioner is **AFFIRMED.**  The Clerk of Court is **DIRECTED** to enter **JUDGMENT** for defendant.  This action is hereby **DISMISSED.**


Date: July 23, 2010                             **/s/ John D. Holschuh**
                                                John D. Holschuh
                                                United States District Judge

---

Pearlman's August 24, 2006 notes about the canoeing outing go on to say that "Patient reports that he may begin working clearing brush."